UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NATASHA J. RAY, ESTATE OF MARY FRISCH, by and through Natasha J. Ray as the heir and representative, THOMAS DESHAZO, and JEANNE DESHAZO, | Case No. 1:23-cv-00488-BLW |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| DAVID SCHILE, KATELIN E. BARTLES, BENJAMIN V. SCHILE, MITCH GARDNER, and ADA COUNTY SHERIFF, | |
| Defendants. | |

**INTRODUCTION**

This matter is before the Court on the Report and Recommendation (R&R) of United States Magistrate Judge Raymond E. Patricco. *See* Dkt. 96. Judge Patricco recommends dismissing plaintiffs' federal claims and declining to exercise supplemental jurisdiction over their state claims. The Court has reviewed plaintiffs' objections to the R&R and finds none persuasive. Accordingly, the Court will adopt the recommended disposition. The Court will, however, modify the R&R because it will convert the pending motions to dismiss to motions for

summary judgment, which will allow the Court to consider the extrinsic, undisputed facts referred to by the parties. With the motions so converted, the Court will grant summary judgment in defendants' favor on the federal claims and dismiss the state claims without prejudice to filing in state court.

## PRELIMINARY PROCEDURAL ISSUES

Before turning to plaintiffs' objections to the R&R, the Court will first address three preliminary issues: (1) whether to allow plaintiffs to file an overlength reply brief in support of their objection to the R&R; (2) whether to grant the parties' motions for judicial notice; and (3) whether to convert the pending motions to dismiss to motions for summary judgment.

### A. Plaintiffs' Motion to File an Overlength Reply Brief

The Court will grant plaintiffs' motion to file an overlength reply brief in support of their objection to the R&R.

Federal Rule of Civil Procedure 72(b) governs the procedures for objecting to an R&R. It authorizes the objecting party to file an objection and the other side to file a response. Neither Rule 72(b) nor this Court's Local Rule 72.1 authorizes a reply brief. Nevertheless, in its discretion, the Court will allow plaintiffs' reply and will grant the motion to file an overlength brief *nunc pro tunc*. That said, the Court will consider the reply (Dkt. 104) only to the extent it responds to arguments raised in defendants' responses; arguments raised for the first time in the reply brief will

be disregarded.

### B. Motions to Take Judicial Notice

The next issue is whether to grant the parties' requests for judicial notice. There are two motions before the Court, one filed by the Ada County Sheriff and the other filed by plaintiffs.

### 1. The Ada County Sheriff's Motion

The Ada County Sheriff asks the Court to judicially notice various filings in the state-court eviction action that is the subject of this federal lawsuit. *See Request to Take Judicial Notice,* Dkt. 72 (referring to, and attaching filings from, *Shile v. Deshazo*, Ada County Case No. CV-01-21-15341). Plaintiffs did not oppose that request, though their non-opposition did have one condition: they said the Court should not take judicial notice of any disputed facts contained within these filings. *See Response,* Dkt. 80-1, at 18, 19. The Magistrate Judge recommended that the Court go along with this approach. *See R&R*, Dkt. 96, at 2 n.1. The Court agrees with this recommendation, particularly because the Sheriff asked the Court to judicially notice the fact of the filings in the state-court eviction action. These facts are undisputed and the Court is well within the bounds of Federal Rule of Evidence 201 to judicially notice the fact of these filings. Accordingly, the Court will grant the Ada County Sheriff's motion.

### 2. Plaintiffs' Motion

After the Magistrate Judge issued the R&R, plaintiffs filed a motion asking the Court to judicially notice "the proceedings and orders" in Plaintiff Natasha Ray's bankruptcy case, *In re Ray*, No. 21-00672-JMM (Bankr. D. Idaho). *See* Dkt. 98, at 1. Plaintiffs contend that the Court needs to consider these filings because, they say, the Magistrate Judge failed to fully evaluate the implications of the bankruptcy court's findings. *See id.* at 6. The Court will partly grant and partly deny this motion.

The complication with this motion is that plaintiffs don't simply ask the Court to judicially notice the fact of any given filing within the bankruptcy case; instead, they ask the Court to go further and judicially notice the bankruptcy court's factual findings. Indeed, plaintiffs describe their motion as one that "does not seek to introduce new evidence *but seeks notice of facts already adjudicated in a prior federal proceeding within this district*." *Plaintiffs' Mtn.,* Dkt. 98, at 2 (emphasis added). These sorts of factual findings aren't subject to judicial notice under Federal Rule of Evidence 201. As the Ninth Circuit has explained, "taking judicial notice of findings of fact from another case exceeds the limits of Rule 201." *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003), *overruled in part on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).

For that reason, the Court will partly grant and partly deny plaintiffs' motion

to take judicial notice, as follows: The Court will judicially notice the fact that on November 3, 2021, Plaintiff Natasha Ray filed a bankruptcy petition. *See In re Ray*, No. 21-00672-JMM (Bankr. D. Idaho). Similarly, the Court will take judicial notice of the fact that, after that filing, the parties filed various documents in the case and the bankruptcy court issued various rulings, including the March 10, 2022 ruling plaintiffs reference in the briefing. *See Mar. 10, 2022 Minute Entry,* Bankr. Dkt. 63. The Court will deny the motion, however, to the extent that Plaintiffs ask the Court to judicially notice the bankruptcy court's factual findings. (That said, the Court will address plaintiffs' argument that the Magistrate Judge failed to account for the bankruptcy court's rulings. That issue is addressed below.)

## C. Conversion of the Pending Motions to Motions for Summary Judgment

Finally, the Court must consider whether to convert defendants' pending motions to dismiss to motions for summary judgment. The Court concludes that conversion is appropriate under Federal Rule of Civil Procedure 12(d), given that the parties presented matters outside the pleadings and the Court intends to consider extrinsic matters in resolving the motions.

Before converting and granting summary judgment, a court must afford the nonmoving party notice and a reasonable opportunity to present pertinent material. But the court may dispense with that requirement where the losing party has had a full and fair opportunity to ventilate the issues. *See In re Harris Pine Mills*, 44 F.3d

1431, 1439 (9th Cir. 1995).

Here, the parties asked the Court to consider additional evidence beyond the pleadings by filing motions for judicial notice. Some of the documents contained in these submissions are proper subjects of judicial notice (e.g., the fact of filings in other courts), while others are not (e.g., the truth of facts underlying other courts' rulings). Conversion allows the Court to consider admissible, undisputed facts consistent with Rule 56.

The Court does not find it necessary to provide additional notice or invite further submissions. The record demonstrates that the parties have had a full and fair opportunity to address the issues. *See, e.g.,* Dkts. 72, 73, 75, 77, 78, 80, 81, 84, 85, 90, 91, 108, 110. Among other things: (1) the undisputed facts are relatively straightforward; (2) the parties have submitted extensive briefing in connection with the R&R, as well as the briefing filed in support of the underlying motions to dismiss; and (3) while defendants' motions to dismiss were pending, plaintiffs themselves filed a motion for summary judgment, asking the Court to summarily adjudicate all claims in their favor. (Although the Court denied that motion without prejudice, it will consider the arguments and evidence submitted there in resolving the converted motions.)

For all these reasons, the Court finds it unnecessary to give plaintiffs any additional notice or opportunity to present new evidence before converting

defendants' motions to dismiss to motions for summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. The Beginning of the State-Court Eviction Proceedings

In March 2015, Plaintiffs Thomas DeShazo and Natasha Ray leased a residential property in Eagle, Idaho from Defendant David Schile. *Am. Compl.* ¶ 20, Dkt. 61. DeShazo and Ray lived in the home with extended family for over six years until November 3, 2021, when they were evicted for failure to pay rent. *Id.* ¶¶ 20, 21, 35; *see also Ray Dec.*, Bankr. Dkt. 26. The eviction proceedings began several weeks earlier, in September 2021, when plaintiffs asked Schile to serve them with a three-day notice to pay rent or vacate the premises. *See Ray Dec* ¶ 1, Bankr. Dkt. 26. Plaintiffs made this request because they were hoping that a three-day notice would facilitate their efforts to obtain emergency rental assistance from a local housing authority, Boise City/Ada County Housing Authority (BCAHA). *Id.* ¶ 1-2, 5. Accordingly, on September 21, 2021,[2] Schile caused a

---

[1] As already noted, given that the Court has converted the pending motions to motions for summary judgment, the factual background recited here is more expansive than that set forth in the R&R. In particular, the Court drew from Plaintiff Natasha Ray's December 4, 2021 declaration, which was filed with the bankruptcy court (at Dkt. 26) on December 8, 2021. *See In re Ray*, No. 21-00672 (Bankr. D. Idaho). Throughout this opinion, references to "Bankr. Dkt." refer to docket entries in *In re Ray*.

[2] Plaintiff Ray indicates that the notice was served "[a]bout September 19, 2021." *Ray* (Continued)

*Notice to Pay Rent or Surrender Possession (Three-Day Notice)* to be served on

plaintiffs. *Id.* ¶ 3, *Ex. 2 thereto.* That three-day notice stated that plaintiffs owed

$21,000 in past-due rent and contained the following, additional verbiage:

> WITHIN THREE DAYS after service of this notice upon you, you
> are to pay said rent in full to your landlord Dave Schile . . . or
> deliver up possession of said premises to your landlord. If you fail
> to comply, legal proceedings will be commenced against you to
> recover possession of the premises, . . . . ***You will have seventy-***
> ***two (72) hours to remove your belongings from the premises***
> ***before your landlord may remove and dispose of such property***
> ***pursuant to Idaho Code Section 6-316 if a court enters judgment***
> ***against you.***

*Sept. 21, 2021 Notice, Ex. 2 to Ray Dec.,* Bankr. Dkt. 26, at p. 10 of 31 (emphasis

added).

Roughly two weeks later, on October 1, 2021, Schile (represented by

Attorney Defendant Mitch Gardner) filed a Verified Complaint for Eviction in

Idaho state court. *Ray Dec.* ¶ 4, Bankr. Dkt. 26, Ex. 3 thereto. The eviction

complaint alleged that plaintiffs had been served with the three-day notice and that

no payments had been made. Schile sought restitution of the property, attorneys'

fees, and costs of suit. A *Summons for Eviction (Expedited Proceeding)* was served

on plaintiffs a few days later.

---

*Dec.* ¶ 3, Bankr. Dkt. 26. The proof of service actually indicates that service was effected two
days later, on September 21, 2021. This minor factual difference is irrelevant, but the Court notes
it for the sake of completeness.

### B.  The Eviction Hearing & Mediated Settlement Agreement

The state court conducted an eviction hearing on October 12, 2021. During that hearing, plaintiffs entered into a mediated settlement agreement with Schile. *Am. Compl.* ¶ 23, Dkt. 61; *Ray Dec.* ¶ 5, Bankr. Dkt. 26. The state-court minute entry sets forth the terms of that agreement as follows:

> Thomas DeSchazo will pay Dave Schile $21,000 on or before October 22, 2021. Payment will be in the form of certified funds and will be delivered . . . by 4 pm
>
> Thomas DeShazo will vacate [the residence] . . . on or before November 7th, 2021, by 5 pm. Keys will be left on the kitchen counter on the above address. ***Any property left will be considered abandoned.***
>
> ***Failure to comply with these terms will result in a judgement of eviction.*** Compliance with these terms will result in a dismissal of the case.

*Oct. 12, 2021 State Court Minutes*, Dkt. 72 (emphasis added). Plaintiff Natasha Ray's attorney, John Runft, "participated in the hearing and mediation." *Ray Dec*. ¶ 6, Bankr. Dkt. 26.

### C.  The Eviction Judgment

BCAHA denied plaintiffs' request for emergency rental assistance, and they did not pay the $21,000 past-due rent to Schile by the October 22 deadline (or at all). Despite failing to pay the past-due rent, plaintiffs nevertheless kept in touch with Schile after the October 22 deadline had passed, including by letting him

know of their efforts to persuade BCAHA to reopen their case and provide emergency rental assistance. Unbeknownst to plaintiffs, however, Schile decided to move forward with the eviction proceedings. At 4:45 p.m. on October 22, 2021—less than an hour after plaintiffs missed the 4:00 pm deadline to pay the $21,000—Schile filed a Notice of Non-Compliance with the state court. *Amended Compl.* ¶ 27; *see also Gardner Dec*., Dkt. 72. This document does not contain a certificate of service, and plaintiffs allege that Schile and his attorneys (Defendants Bartles and Gardner) intentionally elected not to provide them with the notice of noncompliance so that plaintiffs would remain ignorant of the pending judgment of eviction. *Am. Compl.* ¶¶ 27-30, 36, Dkt. 61.

Still though, during post-hearing communications, and after they had failed to pay rent by October 22, 2021, plaintiffs acknowledged "a judgment could be obtained at any time." *Ray Dec.* ¶ 12, Bankr. Dkt. 26; *see also id.* ¶ 33 & Ex. 5 thereto (Oct. 25, 2021 email from T. DeShazo to D. Shile, stating "Obviously your lawyer can take judgment anytime which ends the boise housing payments but that is what lawyers do, get judgments etc."). And that is precisely what happened: On October 27, 2021, the state court judge signed a judgment of eviction. *Am. Compl.* ¶ 28; *see also Eviction Judgment,* Dkt. 72, at 9-10. The following day—October 28, 2021—Plaintiffs leased another residence in Eagle, Idaho and continued packing their belongings as they intended to vacate the property by November 7,

2021. *Am. Compl.* ¶ 29, Dkt. 61

On Friday October 29, 2021, at 3:06 p.m., the state court judgment was docketed. The judgment was accompanied by a Writ of Restitution, signed by the Clerk of Court. *See Writ of Restitution, Ex. E to Judicial-Notice Mtn.,* Dkt. 72. The state court mailed plaintiffs a copy of the eviction judgment. *See Eviction Judgment, Ex. C to Judicial-Notice Mtn.,* Dkt. 72. However, a postal carrier did not pick up the mail until Monday, November 1, 2021, and Plaintiffs did not receive the letter with the eviction judgment until November 5, 2021—after the eviction had occurred. *Am. Compl.* ¶¶ 30-31, Dkt. 61; *Ray Dec.* ¶ 22, Bankr. Dkt. 26.

 **D.  The Eviction**

The plaintiffs first learned of the eviction judgment at 2:45 p.m. on November 2, 2021, when deputies from the Ada County Sheriff's Office personally served Mr. De Shazo with a Writ of Restitution and a Move-Out Advisory. *Am. Compl.* ¶ 32; *Sheriff's Return*, Dkt. 72; *Ray Dec.* ¶ 32, Bankr. Dkt. 26. The Move-Out Advisory informed Plaintiffs that they had to vacate the house by noon the following day. *Am. Compl.* ¶ 32, Dkt. 61; *Move-Out Advisory*, Dkt. 81, at 13; *Ray Dec.* ¶ 32, Bankr. Dkt. 26, Ex. 9 thereto. The Move Out Advisory warned: "If you fail to move your belongings by the date above, the landlord may remove and dispose of such property pursuant to section 6-316, Idaho Code." Dkt. 81, at 13

Plaintiffs did not move out. Instead, Plaintiff Natasha Ray filed a bankruptcy petition at 11:30 a.m. on November 3, 2021—thirty minutes before the scheduled eviction. *Am. Compl.* ¶ 33, Dkt. 61; *Chapter 7 Petition,* Bankr. Dkt. 1. Plaintiffs informed the Ada County Sheriff's Office of the bankruptcy filing and demanded that their eviction be stayed. *Am. Compl.* ¶ 33, Dkt. 61; *see also Sheriff's Return, Ex. D to Judicial-Notice Motion,* Dkt. 72. After speaking with one of David Schile's attorneys, however, Ada County Sheriff's deputies refused to delay. *Am. Compl.* ¶ 33, Dkt. 61.

Deputies from the Sheriff's department gave Plaintiffs 10 minutes to gather minimal personal belongings and then escorted them off the property. *Id.* Defendant David Schile was present on the scene while this occurred. *Id.* ¶ 36 Plaintiffs say that the Ada County Sheriff's Department deployed nine or 10 SUVs and 15 sheriff's deputies to their residence.

**E.  The Post-Eviction Disposition of Plaintiffs' Personal Belongings**

At the conclusion of the eviction, Sheriff's Office deputies provided Plaintiffs with a Trespassing Advisory, which informed Plaintiffs that their landlord could dispose of any property that Plaintiffs had failed to remove from the home. As support for this proposition, the Trespassing Advisory cites Idaho Code § 6-316(2). *See Sheriff's Return* (Dkt. 72, p. 12) and *Trespassing Advisory* (Dkt. 81, p. 16).

After the eviction, David Schile and his attorneys, Ms. Bartles and Mr. Gardner, took the same position on the operation of Idaho Code § 6-316(2) as the Sheriff's Office, telling Plaintiffs that "all property in the home was now the lawful property of Defendant David Schile." *Am. Compl.*, Dkt. 61, ¶ 35; *see also Ray Dec.* ¶ 39. Later, David Schile voluntarily returned some property to Plaintiffs, including Ray's tax documents, K.L.D.'s school violin, and a rented carpet cleaner, though he allegedly refused to return many other items, including medical equipment, computers, photographs, and furniture. *Am. Compl.*, Dkt. 61, ¶¶ 35-38.

## F. The Federal Lawsuit

On November 3, 2023—two years after the November 3, 2021 eviction— plaintiffs brought this lawsuit, alleging a variety of federal constitutional violations as well as two state-law claims, listed here:

| | |
|---|---|
| <u>Claim 1</u>: | Violation of the Due-Process Clause |
| <u>Claim 2</u>: | Violation of the Equal-Protection Clause |
| <u>Claim 3</u>: | Violation of the Fifth Amendment (Takings) |
| <u>Claim 4</u>: | Violation of the Fourth Amendment |
| <u>Claim 5</u>: | Conspiracy to Violate Civil Rights* |
| <u>Claim 6</u>: | Fraud Upon the Court* |
| <u>Claim 7</u>: | Wire Fraud* |
| <u>Claim 8</u>: | Intentional Infliction of Emotional Distress |
| <u>Claim 9</u>: | Extortion* |
| <u>Claim 10</u>: | Declaratory Relief |

*The fifth, sixth, seventh, and ninth claims are alleged against Defendants David

Schile, Katelin Bartles, and Mitch Gardner.[3] The remaining claims are alleged against all defendants.

## GOVERNING LEGAL STANDARDS

### A. Review of the R&R

Under the Federal Magistrates Act, as amended, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If a party objects to a magistrate judge's R&R, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* But the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the R&R that are not objected to. *See Thomas v. Arn*, 474 U.S. 140, 149–50 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Nevertheless, the Act "does not preclude further review by the district judge, sua sponte" whether de novo or under another standard. *Thomas*, 474 U.S. at 154.

In this case, plaintiffs filed objections. Accordingly, the Court has conducted a de novo review of those portions of the R&R. The Court also reviewed the entire

---

[3] Defendant Benjamin V. Schile is named in the fifth claim, though not in the sixth, seventh, or ninth claims.

R&R as well as the record in this matter for clear error on the face of the record and finds as set forth below.

## B. Motion for Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if a reasonable jury could return a verdict for the nonmovant; a fact is "material" if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–52 (1986). The Court views the evidence and draws reasonable inferences in the nonmovant's favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## ANALYSIS

## A. The Due-Process Claim

The majority of plaintiffs' objections to the R&R relate their first claim for relief, which alleges violations of their substantive and procedural due-process rights. Plaintiffs' objections to the recommended dismissal of this claim include the following:[4] *First*, plaintiffs say the "R&R misapplies due process law by

---

[4] The Court has considered all plaintiffs' objections to the R&R—even those not explicitly discussed in this opinion—and finds them unavailing. Accordingly, all objections will be overruled.

conflating eviction and property seizure." *Objection,* Dkt. 97, at 4. *Second*, they contend that the "R&R failed to apply the joint action doctrine to private attorneys" and "misapplie[d] law by overlooking joint participation." *Id.* at 5, 7. *Third*, they complain that the R&R fails to "analyze, address, or even acknowledge" their facial challenge to Idaho Code § 6-316(2). *Id.* at 12. *Fourth*, Plaintiffs contend that the R&R "mistakenly concludes that Plaintiffs fail to state a *Monell* claim against Ada County." *Id.* at 9. *Fifth*, they say the R&R "fails to correctly address the undisputed finding by the United States Bankruptcy Court that title to Plaintiffs' personal property violates Plaintiffs' protected property interests and supports their due process and § 1983 claims." *Id.* at 14. *Sixth,* they argue that even though they had not paid the past-due rent, their landlord was nevertheless contractually obligated to allow them to stay in the home until November 7, 2021. The Court will address these objections in turn.

### Objection 1: Conflation of Eviction and Property Seizure

Plaintiffs' first objection—that the Magistrate Judge improperly conflated eviction and property seizure—is easily resolved. The Magistrate Judge began his analysis of the due-process claim by observing that it has multiple components: First, he noted that plaintiffs alleged substantive and procedural due-process violations based on the eviction. Second, he explicitly noted that the due-process claim involves two discrete forms of loss: removal from the rental home, and loss

of personal property in the rental home. *See R&R*, Dkt. 96, at 9. Then, throughout the R&R, the Magistrate Judge carefully—and separately—analyzed each component part of the due-process claim. *See, e.g. id.* at 10 (signaling that the R&R would "separately analyze Plaintiffs' loss of their rental home from Plaintiffs' loss of their personal property"). Accordingly, the Court will overrule this objection.

**Objection 2: Joint Action**

Likewise, the Court will overrule plaintiffs' objections relating to joint action. The R&R explains that, with respect to the eviction, the *private* defendants obtained a state-court eviction judgment and the Ada County Sheriff had no role in any alleged misconduct that led the issuance of that judgment. As such, the due-process claim relating to the eviction fails as a matter of law.

And as for the seizure of personal property left in the home, the Magistrate Judge correctly concluded that, notwithstanding the parties' focus on municipal liability and state action, plaintiffs' claim fails for a much simpler reason—namely that the 22 hours' notice plaintiffs received was constitutionally sufficient under the circumstances. *See R&R,* Dkt. 96, at 22-24; *see generally Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). This ruling is thoroughly explained in the R&R, and the Court agrees with the analysis. The Court will also take a moment to emphasize that the point of procedural due-process protections is to provide notice and an

opportunity for a hearing. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1959). As the Ninth Circuit has explained, "The government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking." *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008). More broadly, courts are to "assess due process case-by-case based on the total circumstances." *Miranda v. City of Cornelius*, 429 F.3d 858, 866 (9th Cir. 2005).

Here, although plaintiffs essentially argue that the government took their personal belongings like the proverbial thief in the night—without giving them fair notice or a chance to argue against the taking—that's not accurate. As detailed above, by the time plaintiffs lost access to their personal property in early November 2021, they had received multiple notices that they were in danger of being evicted and losing their personal property. Plus, they had entered into a settlement agreement specifying that if they failed to pay past-due rent by a certain date (October 22, 2021), that a judgment of eviction would result. These undisputed facts are spelled out above, but it's worth repeating a few of them here:

> (1) On or about September 21, 2021—roughly six weeks before they were evicted—plaintiffs were personally served with a three-day notice. That notice informed them that they owed $21,000 in past-due rent and that failure to pay would result in commencement of legal proceedings to recover possession of the premises. They were warned that if a court entered judgment against them, they would have three days within which to remove their belongings

from the home.

(2) Around October 1, 2021, after they failed to pay past-due rent,
they were served with an eviction complaint and summons, which
notified them that an eviction hearing would be conducted on
October 12, 2021.

(3) On October 12, 2021, during the state-court eviction hearing—
where they were present with an attorney—plaintiffs entered into
a settlement agreement with their landlord. They agreed to pay
rent by October 22, 2021. They further agreed that failure to
comply with the terms of the agreement would result in a
judgment of eviction.

It is undisputed that plaintiffs never paid the past-due rent. Rather, that agreed-

upon, October 22, 2021 deadline came and went without payment. And in

communications with the landlord—after they had failed to pay rent—plaintiffs

acknowledged that the landlord's attorney could obtain a judgment at "any time."

*See Ray Dec.* ¶¶ 12, 33, Bankr. Dkt. 26; Ex. 5 thereto. On top of this, the Sheriff's

Office did not serve them with a Move-Out advisory until November 2, 2021. And

then they were given approximately 22 hours in which to vacate the premises and

remove their belongings. Under these circumstances—regardless of whether there

may be a state statutory violation[5]—plaintiffs' federal constitutional rights were

not violated. Plaintiffs were given ample time within which to move out, or,

---

[5] The Court expresses no opinion on that issue. The R&R likewise resolved the motions
without weighing in on this question. *See R&R,* Dkt. 96, at 16 (observing that it did not need to
resolve "this thorny question of state law").

potentially, seek an extension in state court—even if the focus is restricted to the 22 hours immediately before the eviction.[6] But in the broader context, it becomes even plainer that there was no due-process violation. Plaintiffs had a sufficient notice and opportunity to be heard. Accordingly, plaintiffs' procedural due-process claim, as it relates to the loss of their personal belongings, fails as a matter of law.

### Objection 3: Plaintiffs' Facial Challenge

Plaintiffs also object to the recommended disposition of their due-process claim on the grounds that the Magistrate Judge did not address their facial challenge to the constitutionality of Idaho Code § 6-316(2) and related statutes. *See Objection*, Dkt. 97, at 12; *Am. Compl.* ¶ 93, Dkt. 61 (requesting a declaration "that Idaho Code §§ 6-316, 6-310, and related statutes are unconstitutional, both facially and as applied to Plaintiffs"). The Court will overrule this objection.

A claim that a statute is facially unconstitutional is "the most difficult challenge to mount successfully," because the challenger "must establish that no set of circumstances exists under which the Act would be valid. *United States v. Salerno*, 481 U.S. 739, 745 (1985). Where both as-applied and facial challenges

---

[6] The Court is unpersuaded by plaintiffs' argument that they could not have sought any sort of emergency relief in state court (such as a limited stay of the eviction proceedings) because of "state court bias, conflict of interest, and plaintiffs' reasonable strategy to limit prejudice." *Objection,* Dkt. 97, ¶ IX, at p. 17.

are pursued, the Supreme Court has instructed courts to first resolve the as-applied challenge. *See Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484–85 (1989). Here, the Magistrate Judge correctly concluded that plaintiffs' as-applied challenge fails. As a result, plaintiffs' facial challenge fails. *See Doe v. Heck*, 327 F.3d 492, 527–28 (7th Cir. 2003). Further, even assuming the as-applied challenge was successful, plaintiffs have not persuaded the Court that there is no set of circumstances under which the challenged statutes would be valid. Plaintiffs' facial challenge fails for that additional reason. *Cf. Todman v. Mayor & City Council of Baltimore*, 631 F. Supp. 3d 314, 340 n.13 (D. Md. 2022), *aff'd,* 104 F.4th 479 (4th Cir. 2024) (concluding that while the plaintiffs/tenants were entitled to summary judgment on their as-applied challenge, their facial challenge failed as a matter of law because the court could not determine that the challenged statute was "unconstitutional in all its applications"). Accordingly, plaintiffs' facial challenge to Idaho Code § 6-316(2) and related statutes fails.

### Objection 4: *Monell*

Plaintiffs also object to the R&R on the grounds that it "mistakenly concludes that Plaintiffs fail to state a *Monell* claim against Ada County." *Objection,* Dkt. 97, at 9. But the absence of an underlying constitutional violation means there is no basis for establishing that a municipal policy or custom caused a constitutional deprivation. In other words, since there is no underlying injury to

link to a municipal policy or custom, the *Monell* claim fails. *See, e.g., City of L.A. v. Heller*, 475 U.S. 796, 799 (1986); *Lockett v. L.A. Cnty.,* 977 F.3d 737, 741 (2020) ("*Monell* claims thus require a plaintiff to show an underlying constitutional violation").

**Objection 5: The Bankruptcy Court's Rulings**

Plaintiffs next object on the grounds that the Magistrate Judge failed to account for the bankruptcy court's ruling. In a nutshell, plaintiffs' logic proceeds along the following lines. First, they note three key rulings from the bankruptcy court, as follows: (1) The bankruptcy court concluded that Ray's personal property had not been abandoned and, accordingly, title had not passed to the landlord; (2) Accordingly, the bankruptcy court ordered that the property be returned to the debtor; (3) Still, though, the bankruptcy court held that the landlord had not violated the automatic stay in seizing the property. Plaintiffs say that, despite these rulings, defendants refused to return the entirety of their personal property, which gives rise to "an independent *constitutional* injury." *Objection,* Dkt. 97, at 16.

The Court is not persuaded. First, assuming that title to the personal property remained with the plaintiffs (as the bankruptcy court concluded), this doesn't mean that seizure of plaintiffs' property amounted to a federal constitutional violation. That point is explained at length above and in the R&R. In short, plaintiffs had sufficient notice and an opportunity to be heard before their personal property was

seized. And if Defendants Schile, Bartles and Gardner have held on to some of that personal property, that complaint logically could be taken up with the bankruptcy court, presumably in a motion for contempt, or in state court, presumably in a conversion action.

### Objection 6: Contract Interpretation

Plaintiffs also say the Magistrate Judge erred because the R&R is based on a misunderstanding of the October 12, 2021 settlement agreement. In short, plaintiffs argue that even though they breached their obligation to pay past-due rent by October 22, 2021, the landlord was nevertheless obligated to allow them to remain in the home until November 7, 2021. *Reply,* Dkt. 104, at 1-4. For ease of reference, here are the salient contractual terms:

> Thomas DeSchazo will pay Dave Schile $21,000 on or before October 22, 2021. Payment will be in the form of certified funds and will be delivered . . . by 4 pm

> Thomas DeShazo will vacate [the residence] . . . on or before November 7th, 2021, by 5 pm. Keys will be left on the kitchen counter on the above address. Any property left will be considered abandoned.

> Failure to comply with these terms will  result in a judgement of eviction. Compliance with these terms will result in a dismissal of the case.

Plaintiffs' interpretation of this contract is contrary to basic principles of contract interpretation. It is blackletter law that if one party materially breaches the terms of an agreement—and that indisputably happened here when plaintiffs failed to pay

the agreed-upon $21,000 in past-due rent—then the other side's performance is excused. *See, e.g., J.P. Stravens Planning Assocs., Inc. v. City of Wallace,* 928 P.2d 46, 49 (Idaho Ct. App. 1996) ("If a breach of contract is material, the other party's performance is excused."). Once plaintiffs failed to pay the past-due rent, Schile's obligation to allow plaintiffs to remain in the home was excused. Accordingly, this objection will be overruled.

### The Substantive Due-Process Claim

Finally, the Court will note that it agrees with the R&R's treatment of plaintiffs' substantive due-process claim. As noted above, plaintiffs' substantive due-process claim has two components: one related to their eviction of the rental home, and the other related to defendants' alleged retention of personal property left in the home after the eviction. Both components of the substantive due-process claim fail for the reasons stated in the R&R. *See R&R,* Dkt. 96, at 12 (explaining that plaintiffs' due-process challenge related to loss of residential rental real property is not cognizable under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1985)); *id.* at 25 (explaining that plaintiffs' substantive due-process challenge to the loss of their personal belongings fails).

### B. The Other Federal Claims

The remaining federal claims lack merit for the reasons set forth in the R&R. *See* Dkt. 96, at 25-29. Briefly:

**Claim 2: Equal Protection**

Plaintiffs object to the recommended dismissal of their equal-protection claim, arguing that the R&R failed to separately analyze the claim before recommending dismissal. *See Objection,* Dkt. 97, at 22-23. That is incorrect. The R&R separately analyzes the equal-protection claim and correctly concluded that it fails because "[t]here are no factual allegations indicating that the Ada County Sheriff's Office had any role in deciding what property was retained and what property was returned." *R&R,* Dkt. 96, at 25. The Court agrees with this conclusion; there is nothing in the complaint (aside from conclusory allegations) indicating that the Ada County Sheriff's Office was involved in these decisions. And there is no indication that plaintiffs would be able to cure this deficiency, particularly as they have repeatedly stated that it is the *attorneys and the landlord* who selectively returned property. *See, e.g., Objection,* Dkt. 97, at 15 (arguing that "[d]espite the Bankruptcy Court's unambiguous order, *Defendants Schile, Bartles, and Gardner* only partially complied. They returned selected items but withheld substantial personal and business property, . . . .") (emphasis added).

**Claim 3: Takings**

Plaintiffs' third claim, alleging a takings, is subject to dismissal because plaintiffs did not object to the Magistrate Judge's recommendation that their takings claim be dismissed. Moreover, even if plaintiffs had objected, the takings

claim is plainly deficient. Most significantly, plaintiffs have not plausibly alleged that their belongings were taken "for public use." *See generally Zeyen v. Bonneville Joint Dist. No. 93,* 114 F.4th 1129, 1139 (9th Cir. 2024). Nor do they indicate that they could amend their complaint to make such an allegation.

### Claim 4: Fourth Amendment

Plaintiffs' Fourth Amendment claim fails for the reasons stated in the R&R. Additionally, plaintiffs have failed to allege facts showing any *unreasonable* seizure of their property, with respect to either their personal belongings or their alleged possessory interest in the rental home. The Supreme Court has observed that while the Fourth Amendment may be implicated in connection with eviction proceedings, "'reasonableness is still the ultimate standard' under the Fourth Amendment, which means that numerous seizures of this type will still survive constitutional scrutiny." *Soldal v. Cook Cnty.,* 506 U.S. 56, 71 (1992). More to the point here, if a seizure is undertaken pursuant to a court order of eviction—which is what occurred here—a showing of unreasonableness is a "laborious task indeed." *Id.*

Plaintiffs rely on *Soldal v. Cook County,* 506 U.S. 56 (1992) in objecting to the dismissal of this claim. But *Soldal* is distinguishable. In that case, defendants forcibly evicted a tenant/mobile-home owner from a leased lot—by physically tearing the mobile home from its foundation and dragging it away—two weeks

before a scheduled eviction hearing and, therefore, before any judgment had issued. *Id.* at 57-58. The facts are drastically different here: The landlord defendant initiated eviction proceedings at plaintiffs' request; plaintiffs then attended an eviction hearing where an attorney participated on their behalf; plaintiffs then agreed to pay rent by a date certain and agreed that failure to pay could result in a judgment. Plaintiffs then failed to pay rent and acknowledged that a judgment could be obtained at any time. And, finally, plaintiffs were given an additional 22 hours or so from the time they learned of the judgment to their actual eviction and seizure of their personal property. These facts do not support a conclusion that the alleged seizure was "unreasonable" under the Fourth Amendment.

### Claim 5: Conspiracy

This fifth claim, for conspiracy, fails because plaintiffs have failed to adequately allege a deprivation of their constitutional rights.

### Claims 7 and 9: Wire Fraud & Extortion

Plaintiffs do not object to the Magistrate Judge's recommendation that Claims 7 and 9, alleging wire fraud and extortion, be dismissed. These claims will be dismissed for the reasons stated in the R&R.

### Claim 10: Declaratory Judgment

This is not an independent claim and will be dismissed for the reasons stated in the R&R.

## C. The State Claims (Claims 6 and 8)

As for the state claims, the Court agrees with the Magistrate Judge's recommended disposition of these claims. Plaintiffs allege two claims arising under Idaho law: (1) fraud upon the state court; and (2) intentional infliction of emotional distress. As the R&R notes, although this case has been pending for a long time, it is in its infancy from a procedural standpoint. So it makes sense to allow the state court to resolve these claims. This is particularly true with respect to the alleged claim for "fraud upon the court." Any such claim should be asserted in the court that was allegedly victimized by the fraud. *See Eliopulos v. Idaho State Bank*, 922 P.2d 401 (Idaho Ct. App. 1996) (state court judge concluded fraud claims had to be brought before the individual court upon which the fraud was allegedly practiced); *see also Universal Oil Co. v. Root Refining Co.,* 328 U.S. 575, 580–81 (1946); *Weisman v. Charles E. Smith Mgmt., Inc.,* 829 F.2d 511, 513– 14 (4th Cir. 1987). Accordingly, Claims 6 and 8 will be dismissed without prejudice.

## D. Leave to Amend

Finally, the Court will address plaintiffs' objection related to Judge Patricco's recommendation that the Court dismiss the complaint without leave to amend. This analysis changes, given that the Court converted the motion to a motion for summary judgment. On balance, though, even absent such a conversion,

the Court is not persuaded that plaintiffs should be given an additional opportunity to amend. Plaintiffs mainly challenge the Court's legal conclusions—they do not proffer any new or different facts that might change the outcome. In sum, the Court concludes that any amendment would have been futile. Accordingly, even in the absence of conversion, the Court would have denied plaintiffs an opportunity to amend their pleading.

### ORDER

**IT IS ORDERED that:**

1.    The Magistrate Judge's Report & Recommendation (Dkt. 96) is **ADOPTED WITH MODIFICATIONS**, as explained above. Accordingly,

    a.    Minor plaintiff K.L.D.'s claims are dismissed without prejudice.

    b.    Defendant Ada County Sheriff's Motion for Judicial Notice (Dkt. 72) is **GRANTED**.

    c.    Defendant Ada County Sheriff's Motion to Dismiss (Dkt. 73), converted to a motion for summary judgment, is **GRANTED IN PART and DENIED IN PART** as follows:

        i.    Summary judgment is GRANTED in this defendant's favor as to Claims 1, 2, 3, 4, and 10.

    ii.    The state claim alleged against this defendant (Claim 8) is **DISMISSED WITHOUT PREJUDICE TO REFILING IN STATE COURT.**

d.    Defendant Mitch Gardner's Motion to Dismiss (Dkt. 75) and Defendant Katelin Bartles and David Schile's Motion to Dismiss (Dkt. 77), converted to motions for summary judgment, are **GRANTED IN PART and DENIED IN PART** as follows:

    i.    Summary judgment is **GRANTED** in these defendants' favor as to Claims 1, 2, 3, 4, 5, 7, 9, and 10.

    ii.    The state claims alleged against these defendants (Claims 6 and 8) are **DISMISSED WITHOUT PREJUDICE TO REFILING IN STATE COURT.**

e.    Defendant Benjamin V. Schile's Motion to Quash for Insufficient Service (Dkt. 78) is **GRANTED**. Accordingly, all claims alleged against Defendant Benjamin V. Schile are dismissed.

2.    Plaintiffs' Motion to Take Judicial Notice of Proceedings in United States Bankruptcy Court (Dkt. 98) is **GRANTED IN PART and DENIED IN PART** as follows:

a.    The Court grants plaintiffs' request to take judicial notice of the fact that Plaintiff Ray filed a bankruptcy petition in this

district on November 3, 2021. *See In re Ray,* Case No. 21-00672-JMM (Bankr. D. Idaho).

b.    The Court also grants plaintiffs' request to the extent that it will take judicial notice of the filings made in *In re Ray*.

c.    The Court denies the request to the extent plaintiffs ask the Court to judicially notice the bankruptcy court's findings of fact in *In re Ray*.

d.    The Court denies plaintiffs' request to "direct the clerk to prepare certified copies of all relevant filings and transcripts for inclusion in the record of this case." *See* Dkt. 98, at 7. The Court will not require the Clerk to ascertain which filings are "relevant," nor will it direct preparation of transcripts.

3.    Plaintiffs' Motion for Leave to File Excess Pages (Dkt. 105) is **GRANTED.**

4.    The Court will enter judgment separately.

DATED: October 3, 2025

B. Lynn Winmill
U.S. District Court Judge